IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER GRUBE, | : | |
| | : | NO. 04-CV-2402 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| KIDSPEACE, | : | |
| | : | |
| Defendant | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Defendant in the case at bar has filed a Motion to Dismiss, which in essence argues that the Plaintiff's Complaint should be dismissed for two reasons. First, Defendant contends that the filing of a Writ of Summons by the Plaintiff in state court prior to it being removed to federal district court by the Defendant did not adequately toll the ninety day Statute of Limitations contained in the Notice of Right to Sue issued by the EEOC. Secondly, Defendant argues that the Plaintiff's retaliation count should be dismissed, because the Plaintiff has not adequately pled that she was involved in any protected activity under federal anti-discrimination law. This Memorandum of Law has been filed by the Plaintiff in opposition to said Motion to Dismiss.

**II.   STANDARD OF REVIEW ON A MOTION TO DISMISS
PURSUANT TO FED. R. CIV P. 12(b)(6)**

The Third Circuit Court of Appeals has long held that summary disposition on the merits is disfavored and the burden is on the moving party. Mortensen v. First Federal Savings & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977); Johnsrud v. Carter, 620 F.3d 29 (3rd Cir. 1980).

A motion to dismiss under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Aamco Automatic Transmissions, Inc. v. Tayloe, 368 F. Supp. 1283, 1286-87 (E.D. Pa. 1973), *quoting* Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The court must treat all facts contained in the complaint and all inferences deducible therefrom in the light most favorable to the claimant.  Aamco Automatic Transmissions, Inc. v. Tayloe, *supra*, 368 F. Supp. at 1287.  Furthermore, the Rules do not require the claimant to set out in detail the facts underlying his claim, but only to give a short plain statement sufficient to put the defendant on fair notice of what the claim is.  Hatten v. Worden, 38 F.R.D. 496, 498 (E.D. Pa. 1965).

The Supreme Court recently handed down a decision indicating that complaints alleging employment discrimination are to be held to the same liberal pleading rules applicable to any other civil action.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).  In Sorema the Supreme Court was concerned with preventing the practice of depriving victims of discrimination of a remedy through the use of technicalities.  As discussed herein, the Defendant's position must be rejected as contrary to both the letter and spirit of the Supreme Court's recent pronouncement in Sorema.

### III.  ARGUMENT

    **A.  PLAINTIFF PRESERVED HER RIGHT TO SUE BY FILING A WRIT OF SUMMONS IN STATE COURT WITHIN NINETY DAYS OF THE EEOC'S ISSUANCE OF A NOTICE OF RIGHT TO SUE.**

        **1.  Federal Courts In Pennsylvania Recognize The Writ of Summons Procedure Provided For Under The Pennsylvania Rules Of Civil Procedure.**

Under Pennsylvania Rule of Civil Procedure 1007, a plaintiff may commence a civil action by filing with the prothonotary either a praecipe for a writ of summons or a complaint. Pa.R.C.P. 1007. The rules also require that "original process be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint." Pa.R.C.P. 401. In the case at bar, the docket entries of the Lehigh County Court of Common Pleas reveal that the Writ of Summons was filed with the Prothonotary of Lehigh County on December 23, 2003, and that it was served on December 29, 2003.

It is well recognized that the filing of a praecipe to commence an action is sufficient to toll the running of the Statute of Limitations. Lamp v. Heyman, 469 Pa. 465, 366 A.2d 882 (1976). Defendant cites Lamp in its brief in support of its position, yet Lamp is wholly inapposite to the case at bar. In Lamp, after the plaintiff sustained injuries from an automobile accident, plaintiff's attorney filed a praecipe for writ of summons in trespass against the defendants in the Beaver County Court of Common Pleas within the applicable two-year Statute of Limitations period. Apparently, plaintiff's attorney then told the prothonotary not to deliver the writ to the sheriff's office. Due to these faulty instructions provided by the plaintiff's attorney, the prothonotary failed to deliver the writ to the sheriff so that it could be issued. Consequently, the writ was never served upon defendants within the Statute of Limitations.

The plaintiff in Lamp subsequently filed a praecipe for reissuance of the writ with a complaint. Again, service was never effectuated. Plaintiff then filed a second praecipe for reissuance of the writ upon which service was finally made. Defendants then filed preliminary objections asserting that the original writ of summons was a "nullity" due to the attorney's faulty instructions to the prothonotary and, therefore, the action was barred for failure to commence the action within the appropriate Statute of Limitations period. The trial court sustained the

defendants' objections and entered judgment in their favor. The Pennsylvania Superior Court affirmed the trial court on appeal.

On petition to the Supreme Court of Pennsylvania, the Court reversed the Pennsylvania Superior Court decision and refused to find the plaintiff's action barred by the Statute of Limitations. Even in <u>Lamp</u>, the Pennsylvania Supreme Court allowed the case to go forward. In the case at bar, however, ***there is no question regarding lack of service of process***. The Sheriff of Lehigh County served the Writ of Summons on the Defendant, in Lehigh County, on December 29, 2003. It is difficult to understand why the Defendant has chosen to place so much reliance upon <u>Lamp</u>, a case which revolved around a factual pattern involving lack of proper service of legal process. Lack of service, in the case at bar, simply is not an issue.

Another *apropos* example can be found in <u>Krouse v. American Sterilizer Co.</u>,872 F.Supp. 203 (W.D.Pa..1994), *aff'd*, 126 F.3d 494 (3rd Cir. 1997), where the employee filed a praecipe for writ of summons in a Pennsylvania Court of Common Pleas, claiming that the employer had violated the Americans with Disabilities Act by refusing to accommodate a work-related back injury. After removal, the employer filed a motion to dismiss on the ground that claim was barred by applicable statute of limitations. The district court held that plaintiff's filing of a praecipe for writ of summons in state court constituted commencement of a civil action for purposes of the limitations provision governing ADA claims, notwithstanding defendant's contention that plaintiff was required to file a complaint satisfying the requirements of Federal Rule of Civil Procedure.  In summary, federal courts recognize Pennsylvania's procedure which allows a writ of summons to be filed in order to commence a legal proceeding.  <u>Perry v. City of Philadelphia</u>, No. 99-CV-2989, 1999 U.S. Dist. LEXIS 12915 (E.D. Pa. Aug. 17, 1999); <u>Dravo Corp. v. White Consol. Industries</u>, 602 F.Supp. 1136 (W.D.Pa. 1985); <u>Adams v. Ford Motor Co.</u>,

1987 WL 13344 (E.D.Pa., June 30, 1987); Miller v. Philadelphia Geriatric Center, 2002 WL 1608223 (E.D.Pa., Jul 15, 2002); Bailey v. Dell Publishing Co., Inc., 790 F. Supp. 101 (W.D. Pa. 1992), *aff'd*, 983 F. 2d 1049 (3rd Cir. 1992); Young v. PENNDOT, 690 A.2d 1300 (Pa. Cmwlth. Ct. 1997). See also, Deily v. Waste Management of Allentown, Inc.,CIV. A. 00-1100, 2000 WL 1858717, 2000 U.S. Dist. LEXIS 18205 (E.D. Pa., December 19, 2000,), *citing* Patterson v. American Bosch Corp., 914 F.2d 384, 387 (3rd Cir. 1990), for the proposition that a praecipe for Writ of Summons commences an action for purposes of the running of the Statute of Limitations.

**2.   The Outcome of Defendant's Motion is Determined by Vail v. Harleysville Insurance Company.**

The precise facts in this case are governed by a nearly identical fact pattern in Vail v. Harleysville Insurance Co., No. CIV. A. 2002-CV-02933, 2002 WL 32172799, 2003 U.S. Dist. LEXIS 17405 (E.D. Pa., September 30, 2003,).[1]  It is odd that the defense has cited Vail in support of its position, because the holding in Vail is in stark contrast to the position taken by the defense in its Motion to Dismiss. In the case at bar, Defendant argues that the Plaintiff's Complaint should be dismissed, because the Plaintiff waited four months to file her Complaint, subsequent to her having filed a Writ of Summons and having that Writ served by the Sheriff. However, in Vail, *Id*., at *3, Judge Gardner noted:

> Defendant correctly states that plaintiff did not file his Complaint in state court until April 18, 2002, 254 days after the EEOC issued the Right to Sue Letter and ***over five months after the 90-day filing period elapsed.*** Nevertheless, under Pennsylvania procedural rules, a complaint is not required to initiate a lawsuit. Hence, we agree with plaintiff, disagree with defendant and conclude that plaintiff properly commenced this action in Pennsylvania state court prior to defendant removing this action to federal court. (emphasis supplied).

---

[1]   Plaintiff Kenneth Vail was represented by counsel for Plaintiff in the case at bar.

The Vail Court also found it worth noting that state law procedural rules provide a mechanism for forcing the filer of a Writ of Summons to come forth with a full complaint, and the defendant for inexplicable reasons had failed to avail itself of that procedure:

> It is not until defendant filed the within motion to dismiss on May 21, 2002, 200 days after plaintiff commenced this action, that defendant first complains that plaintiff did not file his Complaint earlier. Because it is clear that defendant had a mechanism to require plaintiff to file a complaint in Pennsylvania state court and did not avail itself of the opportunity to do so, we reject defendant's contention that plaintiff's claims should be barred because defendant did not receive a complaint earlier.

Id., at *4

In the case at bar, it is worth noting that the Defendant points to the fact that the Plaintiff waited four months to file her Complaint, subsequent to the filing of the writ of summons, arguing that this delay will be fatal to her case. Ironically, Defendant claims that its position is underscored by Vail. This is difficult to comprehend, because in Vail, the Court noted that the plaintiff waited ***five months*** to file his Complaint after filing his praecipe for Writ of Summons. In Vail, the Court denied the defendant's Motion to Dismiss, which is the same result that should prevail in the case at bar.

    **B.**    **PLAINTIFF'S APRIL 23, 2002 MEMORANDUM CONTAINED AN ACCUSATION THAT THE NEGATIVE TREATMENT SHE WAS RECEIVING MAY HAVE BEEN ATTRIBUTABLE TO THE FACT THAT SHE WAS A WOMAN IN A SENIOR MANAGEMENT POSITION.**

        **1.**    **The Evidence Will Reveal That Few Women Had Ever Ascended To The High Level Of Management To Which The Plaintiff Had Ascended, and That This Fact Had Caused The Plaintiff To Experience Ongoing Acts Of Discrimination.**

At this early stage of the litigation, the Court has nothing before it to consider other than the Plaintiff's Complaint. The Defendant, however, seeks to foreclose the litigation process by having the Court summarily dismiss the Plaintiff's Complaint without an opportunity to proffer

6

additional evidence of retaliatory motive. As noted by the Defendant, the Plaintiff submitted a memorandum to management on April 23, 2002, in which she indicated that the adverse treatment she was receiving at the time may in fact have been the result of a discriminatory animus resulting from her being a woman in a high management position in a male-dominated management team. Plaintiff then was fired four months after having submitted her memorandum to management.

The Defendant claims that the Plaintiff's April 23, 2002 memorandum was not sufficient to constitute "protected activity" under the law. The defense also claims that a discharge four months later does not adequately raise an issue as to the existence of a causal link between the protected activity and the subsequent adverse action. Plaintiff respectfully submits that the Defendant's arguments are both premature as well as misplaced, and that her Complaint adequately delineates a cause of action for retaliation under Title VII of the federal Civil Rights Act.

**2. Plaintiff's April 23, 2002 Memorandum Constitutes an Informal Complaint to Management.**

Plaintiff's evidence will reveal that after she submitted her April 23, 2002 memorandum to management, the environment in which she had to work became more hostile than ever, and that the Defendant immediately began ratcheting up the pressure which eventually led to her termination four months later. This type of precipitous increase in the hostility of the work environment subsequent to an allegation of discrimination has been held by this Court to constitute evidence sufficient to submit to a jury on the question of retaliation. See, *e.g.*, Seebald v. Praxair, Inc., Civil Action No. 03-2172, 2004 U.S. Dist. LEXIS 2643 (E.D. Pa. January 21, 2004).

To establish a prima facie retaliation claim, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Nelson v. Upsala College, 51 F.3d 383, 386 (3rd Cir. 1995) (citing Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3rd Cir. 1994), *cert. denied*, 513 U.S. 1022, 115 S. Ct. 590 130 L. Ed. 2d 503, (1994)). Although "temporal proximity of the adverse action to a plaintiff's protected activity can give rise to an inference of causation sufficient to satisfy plaintiff's burden" (Woods v. Bentsen, 889 F. Supp. 179, 187 (E.D. Pa. 1995) (*citing* Jalil v. Avdel Corp., 873 F.2d 701, 708 (3rd Cir. 1989), *cert. denied*, 493 U.S. 1023, 110 S. Ct. 725 107 L. Ed. 2d 745, (1990))), "the mere passage of time is not legally conclusive proof against retaliation." Robinson v. Southeastern Pennsylvania Transp.Auth., 982 F.2d 892 (3rd Cir. 1993); see also, San Filippo v. Bongiovanni, 30 F.3d 424, 444 (3rd Cir. 1994), *cert. denied*, 513 U.S. 1082, 115 S. Ct. 735 130 L. Ed. 2d 638, (1995).

Although there is a direct temporal proximity of four months in the case at bar, it is worth noting nonetheless that the Third Circuit has held that "where there is a lack of temporal proximity, circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference [of causation]." Kachmar v. Sunguard Data Systems, Inc., 109 F.3d 173, 177 (3rd Cir. 1997). See also, San Filippo, 30 F.3d at 444 ("Although a dismissal that occurs years after protected activity might not ordinarily support an inference of retaliation, where a plaintiff engages in subsequent protected activity and the plaintiff is dismissed shortly after the final episode of such protected activity, a fact-finder may reasonably infer that it was the aggregate of the protected activities that led to retaliatory dismissal.") Accordingly, even in the absence of temporal proximity between the protected activity and discharge, the Court must

"allow[] a plaintiff to substantiate a causal connection for purposes of a prima facie case through other types of circumstantial evidence that support the inference." Farrell v. Planters Lifesaver Co., 206 F.3d 271, 280-81 (3rd Cir. 2000).

In order for Plaintiff to support her claim that she was subjected to an ever-increasing hostile work environment between April 23, 2002 and her termination four months later, the discriminatory harassment must be "severe or pervasive," based on all the circumstances, including "the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating, whether the conduct unreasonably interfered with the employee's work performance, and the effect of the conduct on the employee's psychological well-being." Che v. Mass. Bay Trans. Auth., 342 F.3d 31, 40 (1st Cir. 2003).

In the case at bar, the record of adverse actions taken by the Defendant in a relatively short period of time will provide more than adequate proof that efforts were firmly under way to transform this Plaintiff's life at work into an extremely unpleasant experience. Whether such harassment is "sufficiently severe" or "pervasive" requires an objective analysis of the circumstances based on "common sense, and an appropriate sensitivity to social context." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 23 (1st Cir. 2003); see also, Mailhot v. FedEx Ground Package System, Inc., 2003 U.S. Dist. LEXIS 15087, 2003 WL 22037314, *3-4 (D.N.H. Aug. 29, 2003). "As a general matter, these are questions best left for the jury," Che, 342 F.3d at 40.

In the final analysis, temporal proximity alone is ***but one method*** of proving retaliation. See, Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994) (stating that "one way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action."); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir.

1991) (stating that "there are many sources of circumstantial evidence that can demonstrate retaliation").  Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection. See Kachmar, *supra*, 109 F.3d at 177, stating that "where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference" that a causal connection exists); Sumner v.United States Postal Serv., 899 F.2d 203, 209 (2nd Cir. 1990) (stating that "the causal connection between the protected activity and the adverse employment action can be established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct"); 2 Arthur Larson & Lex K. Larson, Employment Discrimination Section 35.02, at 35-15 (2d ed. 2001).

When examining such evidence, it is worth noting that the retaliation prima facie case is "a small showing that is not onerous and is easily made." Kosereis v. State of Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003).  In determining whether a plaintiff has produced prima facie evidence of causation, the decisions of the Third Circuit Court of Appeals have generally focused on two indicia:  timing and evidence of ongoing antagonism. See, Kachmar, *supra*, 109 F.3d at 177 ; Woodson v. Scott Paper Co., 109 $F.3^{rd}$ 913, 920-21 (3d Cir. 1997); Watkins v. Nabisco Biscuit Company, 224 F. Supp.2d 852, 871 (D.N.J. 2002).

Although the timing of an employer's adverse employment action will, by itself, rarely provide sufficient prima facie evidence of retaliation, the temporal proximity between an employee's termination and his protected activity may permit an inference of causation where the relatively short interval between the two is "unusually suggestive" of retaliation. See,

Krouse v. American Sterilization Co., 126 F.3d 494, 500 (3rd Cir. 1997); Robinson, *supra*, 120 F.3d at 1302 (observing that temporal proximity alone may suffice to establish a causal connection if the timing of an employer's adverse employment action is "unusually suggestive" of retaliation); see also, Schatzman v. Martin Newark Dealership, Inc.,158 F. Supp.2d 392, 403 (D. Del. 2001) (noting that "courts are quick to draw an inference of causation" where the alleged retaliation "occurs only a short time after the employer receives notice of an employee's protected activity"); and see, Jalil v. Avdel Corporation, *supra*, 873 F.2d at 708 (finding that record allowed for an inference of causation where less than two days elapsed between the plaintiff's termination and the date his employer was put on notice of his protected activity). In cases where the timing of an employer's adverse action is, by itself, inconclusive, an employee may demonstrate the requisite causal link by producing circumstantial evidence of "ongoing antagonism" or "retaliatory animus" in the intervening period between his protected activity and the adverse action. See Kachmar, *supra,* 109 F.3d at 177; Woodson, *supra* 109 F.3d at 921.

Timing and proof of antagonism are not, as noted above, the only methods by which a plaintiff can make out a prima facie showing of causation. Abramson, *supra*, 260 F.3d at 289 (noting that a "broad array" of circumstantial evidence may be used to illustrate a potential causal link between a plaintiff's protected activity and an employer's adverse action); Kachmar, *supra*, 109 F.3d at 177 (observing that the "proffered evidence, when looked at as a whole, may suffice to permit a causal inference"). After all, "it is causation, not temporal proximity [or evidence of antagonism], that is an element of the plaintiff's prima facie case, and temporal proximity [or antagonism] merely provides an evidentiary basis from which an inference [of causation] can be drawn." Farrell, *supra*, 206 F.3d at 281 (*quoting* Kachmar, *supra,* 109 F.3d at 178 ).

Thus, the Court of Appeals has not excluded the possibility that the timing of an employer's action, together with "other types of circumstantial evidence," may also suffice to support an inference of causation. Farrell, 206 F.3d at 280-81; see also Kachmar, *supra,* 109 F.3d at 178 (observing that "the element of causation, which necessarily involves an inquiry into the motives of the employer is highly context-specific"). In short, the case law has set forth few limits on the type of evidence which might suffice to establish a prima face showing of causation. See also, *e.g.*, Summit Bancorp Inc., 318 F.3d 183, 189 (3rd Cir. 2003); Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493 (9th Cir. 2000).

### 3.  No Need To Establish Underlying Violation.

An individual need not establish a violation of the underlying statute to be afforded protection from retaliation. See, § 2 of the EEOC's Compliance Manual on "Threshold Issues", § 5.  See also § 8: Retaliation, EEOC Compliance Manual, Volume II (BNA) § 8-II B.1, 614:0002 (1998).  As stated in the EEOC's Compliance Manual on Retaliation (Section C, Protected Activity), *supra*, participation is protected regardless of whether the allegations in the original charge were valid or reasonable. A person is protected against retaliation for opposing perceived discrimination if she had a reasonable and good faith belief that the opposed practices were unlawful.  Thus, it is well settled that a violation of the retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.  Little v. United Technologies, 103 F.3d 956, 960 (11th Cir. 1997); Trent v. Valley Electrice Association, Inc., 41 F.3d 524, 526 (9th Cir. 1994); Keeshan v. The Home Depot, Civil Action No. 00-529, 2001 U.S. Dist. LEXIS 3607 (E.D. Pa. March 27, 2001); Aman v. Cort Furniture Rental Corp., 85 F.3d

1074, 1085 (3rd Cir. 1996); California Dept. of Corrections v. Moyo, 513 U.S. 1081, 115 S. Ct. 732, 130 L.Ed.2d 635 (1995).

### 4. Plaintiff's Informal Complaint to Management Was Sufficiently Specific.

Defendant appears to be taking the position in its brief that the Plaintiff was in some way obligated to present a formal, explicitly worded charge of discrimination to management in order to invoke the protection afforded by the anti-retaliation provisions of Title VII. However, the applicable case law appears to recognize that in many instances, employees will provide a general assessment or statement of what they perceive an employment problem to be, and this general complaint is viewed as constituting federally protected activity. In sum, an informal complaint can constitute protected activity so as to give rise to retaliation. Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1137 (5th Cir. 1981); Nave v. Wooldridge Construction of Pa., Inc., 1997 U.S. Dist LEXIS 9203, 1997 WL 379174 (E.D. Pa., June 30, 1997), *citing* Barber v. CSX Distribution Services, Inc., 68 F.3d 694, 701 (3rd Cir. 1995); Sumner v. U.S. Postal Service, *supra*; Plakio v. Congregational Home, Inc., 902 F. Supp. 1383, 1392 (D. Kan. 1995); see also, *e.g.*, Brock v. Richardson, 812 F.2d 121, 124-25 (3rd Cir. 1987) (informal complaint under FLSA); EEOC v. White & Sons Enter., 881 F.2d 1006 (11th Cir. 1989); Breenen v. Maxey's Yamaha, Inc., 513 F.2d 179 (8th Cir. 1989); Martin v. General Electric Co., 891 F. Supp. 1052, 1060 (E.D. Pa. 1995) (terminating an employee after receiving a letter of this nature from the employee's counsel constitutes an act of retaliation); Helfrich v. Lehigh Valley Hospital, No. 03-5793, 2003 WL23162431 (E.D. Pa. Dec. 22, 2003).

IV.     **CONCLUSION**

Based upon the foregoing arguments and authorities, Plaintiff respectfully requests your Honorable Court to deny and dismiss the Defendant's Motion to Dismiss.

Respectfully submitted,

_____
DONALD P. RUSSO, ESQUIRE
Attorney for Plaintiff
117 East Broad Street
P.O. Box 1890
Bethlehem, PA 18016-1890
(610) 954-8093
Attorney I.D. #25873

## **CERTIFICATE OF SERVICE**

I, Donald P. Russo, hereby certify that on this date I did serve upon opposing counsel a true and correct copy of the within Memorandum of Law in Opposition of Defendant's Motion to Dismiss via United States first class mail, postage prepaid, addressed as follows:

Sean M. Hart, Esquire<br>
HEIMBACH, SPITKO & HECKMAN<br>
535 Hamilton Street, Suite 200<br>
Allentown, PA  18101

Date:_____         _____
                                              DONALD P. RUSSO, ESQUIRE
                                              Attorney for Plaintiff